SPERRY RAND CORPORATION, a Delaware corporation, Appellee,

v.

A–T–O, INC. (formerly "Automatic Sprinkler Corporation of America") et al., Appellants.

No. 71–1053.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1971.

Decided Sept. 7, 1971.

George S. Leonard, Washington, D. C. (Leonard, Clammer & Flues, Washington, D. C., Lloyd T. Smith, Jr., Tremblay, Colmer & Smith, Charlottesville, Va., on brief), for appellants.

John S. McGeeney, Stamford, Conn. (Francis J. McNamara, Jr., Ridgway M. Hall, Jr., and Cummings & Lockwood, Stamford, Conn., and Lewis T. Booker, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Sperry Rand Corporation ("Sperry Rand"), invoking the diversity jurisdiction of the district court, sought damages and injunctive relief against Electronic Concepts, Inc. ("ECI"), John E. Zentmeyer, Jr. ("Zentmeyer"), a former employee of Sperry Rand and later president of ECI, and Gus K.

Tebell ("Tebell"), also a former employee of Sperry Rand and later an employee of ECI.[1] As a first cause of action, Sperry Rand alleged a misappropriation by defendants of Sperry Rand's confidential manufacturing data, designs and drawings for a slotted array antenna and their use to compete with Sperry Rand; and as a second cause of action, it alleged a misappropriation by defendants of Sperry Rand's confidential bid pricing information in connection with a United States Coast Guard radar contract and the use of this information and other data wrongfully obtained from Sperry Rand to underbid Sperry Rand on the contract. The district judge found liability on the part of defendants under both of Sperry Rand's causes of action, and he awarded compensatory damages, punitive damages and injunctive relief. We agree with his conclusions as to liability and injunctive relief, but we find error in the calculation of the money damages. We will, therefore, vacate the judgment as to the damages awarded and remand the case for reassessment of damages in accordance with our views.

## I

■ The judgment appealed from was arrived at after a protracted trial, and the district judge commendably made extensive findings of fact, including resolutions of credibility in the many areas in which the testimony was in conflict, as well as summaries of the evidence, not only to support his conclusions as to liability but also to support his conclusions as to damages and in-injunctive relief.[2] As the case comes to us, defendants' argument with regard to liability is exclusively factual. We have examined the voluminous record in great detail and conclude that, as to liability,

this is a classic case for affirmance under the mandate of Rule 52(a) F.R.Civ.P. that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We could add nothing to legal literature by a detailed statement of why the district judge's findings with respect to liability are not clearly erroneous and must be affirmed. It suffices to say that with respect to misappropriation of trade and proprietary secrets there was ample evidence, accepting as we must the district judge's credibility determinations, to prove the following:

Zentmeyer, a graduate engineer, was employed by Sperry Rand in 1959, and Tebell, also a graduate engineer was engaged at about the same time. Upon being hired, each signed an agreement providing:

> I will not, either during or subsequent to the term of my employment, directly or indirectly divulge to unauthorized persons any information designated as top secret, secret, or confidential by the Company * * * and not known to the general public or recognized as standard practice, whether required or developed by me in the course of my employment or obtained from other employees * *.

At that time Sperry Rand and others were seeking to devise a radar antenna less bulky and more efficient than the parabolic reflector and pillbox type antennae then being manufactured and used. At the time of his employment Zentmeyer had no special expertise in the area of slotted array antennae, but he played an important role in the research leading to the development of the device.

---

1. Following institution of the suit, Automatic Sprinkler Corporation of America purchased the assets of ECI and assumed its liabilities, including its liabiity, if any, by reason of this suit. ECI was thereafter dissolved. The name of Automatic Sprinkler Corporation of America was changed in October, 1969, to A–T–O, Inc. By agreement of the parties, A–T–O, Inc. was made a party to this suit. Although A–T–O, Inc. will be liable for any liability on the part of ECI, in this opinion only the designation ECI will be used for the corporate defendants.

2. Sperry Rand Corporation v. Electronics Concepts, Inc., 325 F.S. 1209 (E.D.Va. 1970).

He directed much testing and experimentation and accumulated a substantial body of data. These data were used in the period 1960 to 1964 to develop commercial radar and, beginning in 1963, to design and manufacture a slotted array antenna under a Coast Guard contract which set forth the performance standards for the antenna but left to the manufacturer the task of developing a design to meet these standards. Sperry Rand was awarded the Coast Guard contract and the radar manufactured thereunder was known as the SPS–53. Tebell was assigned to the position of project engineer on this contract. Zentmeyer was so enthusiastic about fulfillment of the Coast Guard specifications and so confident that he had made new discoveries that he filed an invention description sheet with the Sperry Rand patent department. The patent department concluded, however, that because of disclosures in the prior art, the newly developed antenna array was not patentable. As found by the district judge, the Sperry Rand antenna array, developed primarily by Zentmeyer while he was in Sperry Rand's employ, was a valuable property that came about only after a great investment of time, effort and money and that the drawings and manufacturing data, techniques and processes constituted a trade secret of great monetary value. The district judge's findings were certainly not clearly erroneous in view of the evidence of the difficulty of developing, designing and providing a workable slotted array antenna and the fact that the finished product was original, theretofore unknown in the industry, and an advance in the field. See Servo Corp. v. General Electric Co., 393 F.2d 551 (4 Cir. 1968).

Zentmeyer left Sperry Rand's employ in 1964 to become president of ECI, knowing that ECI, which until then had made neither radar nor radar antennae, intended to compete with Sperry Rand in the field. Admittedly, he took with him much data, including antenna patterns, laboratory reports, copies of pages of engineering laboratory notebooks, engineering sketches, blueprint drawings, engineering estimates of hours necessary to do certain work, an antenna and pedestal drawing, a slotted array antenna, and a copy of Sperry Rand's technical proposal for its 1963 Coast Guard contract. Although Zentmeyer claimed that he had the permission of his former superior to remove this valuable data, the district judge's credibility determination that he did not is amply supported.

With regard to the misappropriation of confidential bid pricing information, the record supports the findings that in 1966, when Tebell was still a Sperry Rand employee, he turned over to Zentmeyer, for his use at ECI, a copy of Sperry Rand's technical manual for the Coast Guard SPS–53 radar. The manual contained detailed drawings and parts listed for the radar, and this information was not generally available to the public. At the time the Coast Guard was inviting bids for ninety additional SPS–53 radars, and Tebell and Zentmeyer intended that ECI would use the knowledge contained therein to bid on the Coast Guard contract. In fact, ECI did use that manual and the other data which Zentmeyer had misappropriated from Sperry Rand in preparing a bid.

In addition, Zentmeyer and Tebell conspired for Tebell to supply Zentmeyer with information in regard to the price which Sperry Rand would bid on the Coast Guard contract so as to enable ECI to underbid Sperry Rand. Tebell furnished ECI with Sperry Rand's proposed bid price, and ECI underbid Sperry Rand by $6,420.00, ECI submitting a bid of $889,156.00 and Sperry Rand submitting a bid of $895,576.00.

Concluding that the facts as found have ample record support and that these facts inescapably lead to the legal conclusions that proprietary and secret data were misappropriated and that confidential bidding information and data were also misappropriated, all to the detriment of Sperry Rand, we turn to the injunctive and monetary relief granted by the district judge.

**1392**

## II

### A.

■ We deal, first, with injunctive relief. The district judge enjoined Zentmeyer, Tebell and all others acting in concert with them, from the manufacture or sale of a slotted array antenna in connection with any radar device for a period of two years.[3] The district judge also enjoined the defendants and others acting in concert with them from using, revealing to others or aiding others in the use of the knowledge of, the contents of the documents, materials and data which had been misappropriated, and directed that all such documents, data, material or products in the possession of the defendants or under their control be returned to Sperry Rand.

Except to argue that no relief should have been granted because no liability was established, defendants make no special point with regard to injunctive relief. Our view is that the district judge fashioned appropriate relief. He required the return of the misappropriated material, and he restrained the manufacture or sale of a slotted array type antenna for a period of two years. An order to return stolen property cannot be faulted. There was evidence that a small firm would require a period of four or five years to develop the misappropriated data and this evidence, together with evidence of the time consumed by Sperry Rand in developing the misappropriated data, shows that the two year restriction on the manufacture and sale of a slotted array type antenna was not unreasonable or did not constitute an abuse of discretion in fashioning equitable relief.

### B.

The district judge awarded the following substantial damages:

$631,012.00—compensatory damages, including attorneys' fees—

awarded against all defendants.

$175,000.00—punitive damages—awarded against Zentmeyer and ECI.

$ 10,000.00—punitive damages—awarded against Tebell.

$ 816,012.00—total damages awarded to Sperry Rand.

The opinion of the district court discloses that the $631,012.00 item of compensatory damages was arrived at as follows:

$175,000.00—value to ECI of misappropriated documents materials and data, excluding bidding data and the manual used in preparing ECI's bid.

$231,012.00—loss of profit to Sperry Rand as a result of being underbid on the Coast Guard contract.

$225,000.00—attorneys' fees.

$631,012.00—total compensatory damages, including attorneys' fees.

We find error in the assessment of damages.

■■ We consider, first, the allowance of $175,000.00 as the value to ECI of the misappropriated items. There are two basic methods for assessing damages for misappropriation of trade secrets: one, the damages sustained by the victim (the traditional common law remedy), and the other, the profits earned by the wrongdoer by the use of the misappropriated material (an equitable remedy which treats the wrongdoer as trustee *ex maleficio* for the victim of the wrongdoer's gains from his wrongdoing). R. Ellis, Trade Secrets § 286 (1953); Restatement of the Law of Torts §§ 746 and 747 (1938); R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 59.3 (1965). Ordinarily a plaintiff may recover either, but not both, because to al-

3. In his formal judgment the district judge reserved the power to modify, enlarge or vacate this aspect of the judgment during the two-year period. This reservation was to implement the statement in his

opinion that the defendants would be granted leave to apply to the court for a modification of the injunction "to the end that innocent parties with whom they may have contracted will not be harmed."

low both would permit double recovery. Ellis, *supra*, § 287; Restatement, *supra*, § 747(c); Harley & Lund Corp. v. Murray Rubber Co., 31 F.2d 932 (2 Cir. 1929), cert. den., 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007 (1929); Consolidated Boiler Corp. v. Bogue Elec. Co., 141 N.J.Eq. 550, 58 A.2d 759 (1949). Since the objective in allowing damages is to compensate the plaintiff for the difference in his position before and after the misappropriation of his secret, his probable loss may be the more significant measuring rod than the misappropriator's actual gain. Callman, *supra*, § 59.3 at 497.

Plaintiff argues that the $175,000.00 was properly allowed under the "comparison of cost method" of assessing damages employed in International Industries, Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3 Cir. 1957), appeal dismissed, 355 U.S. 943, 78 S.Ct. 529, 2 L. Ed.2d 523 (1958). In that case defendant was a manufacturer and shipper of liquefied petroleum gas who misappropriated a plan for shipment by waterways which enabled it to cut shipment costs. The court allowed plaintiff to recover the savings defendant obtained in shipping over the method it had previously used, but a close reading of the opinion discloses that the "comparison of cost method" was used to determine the wrongdoer's profits. Indeed, the court remarked at one point that "the *profits* are simply measured by the *savings*." (emphasis supplied.) 248 F.2d at 702. Gordon Form Lathe Co. v. Ford Motor Co., 133 F.2d 487 (6 Cir. 1943), aff'd. memo by an equally divided court, 320 U.S. 714, 64 S.Ct. 257, 88 L.Ed. 419 (1943), not cited by the parties but relied on in *International Industries* was a patent infringement case where the "comparison of cost method" of assessing damages was also employed but the opinion makes even clearer than *International Industries* the fact that this method was employed to ascertain the infringer's *profits*. 133 F.2d 492, 494 and 497.

■ Even if we assume that ECI saved $175,000.00 in research and development costs by using the misappropriated materials and thereby increased its profits by a like amount, it follows that Sperry Rand may not, under the authorities cited, recover both its damages from loss of the Coast Guard contract and ECI's profits derived therefrom because to allow both would be to allow double recovery. And we think that damages to Sperry Rand is the more appropriate measure of recovery than ECI's profits. ECI successfully used the misappropriated data in a single transaction, and it is being required to return the misappropriated material and is being enjoined from unfair competition with Sperry Rand for two years. There is thus no need for further equitable relief when Sperry Rand can prove legal damages in a greater amount.

■ Double recovery for Sperry Rand cannot be justified on the theory that defendants committed two separate acts giving rise to liability on their part, i. e., misappropriation of general proprietary secrets and misappropriation of bidding data and bidding price. Under the facts of this case, both of these objects of misappropriation were used in combination to inflict a single specific wrong, i. e., underbidding Sperry Rand and depriving it of the Coast Guard contract which it would otherwise have been awarded. Thus, the item of $175,000.00 must be disallowed.

■ In regard to $231,012.00 awarded for loss of profit to Sperry Rand as a result of losing the Coast Guard contract, we think the amount awarded was proper. Sperry Rand offered evidence that its profit alone (in the strict economic sense) on the contract, had it received the award, would have been $95,955.00, and that if it had gained the contract it would have also recovered fixed overhead costs of $78,592.00, and material overhead costs of

$10,264.00.[4] Additionally, there was evidence tht Sperry Rand could reasonably have expected a 25% follow-on spares order to supplement the basic contract and, after computing the expected revenues and estimated costs derived from the follow-on spares order that it would have realized, additional profit of $23,989.00, recovery of additional general and administrative expenses of $19,648.00 and material overhead of $2,564.00. These six items total $231,012.00.[5] Thus, we find support for allowance of this total item.

▋ We conclude that the allowance of $225,000.00 for attorneys' fees was error. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." (footnotes eliminated.) 6 Moore's Federal Practice ¶ 54.77[2] at 1354 (1965).[6] As we view Virginia law, it would not support the allowance of counsel fees here. The Virginia rule is that "[e]xcept in rare instances, the power of a court to require one party to contribute to the fees of the counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which inures to the common benefit of all * * *." McCormick v. Elsea, 107 Va. 472, 475, 59 S.E. 411 (1907), quoted with approval in Norris v. Barbour, 188 Va. 723, 51 S. E.2d 334, 342 (1949).

Aside from "fund" theory cases, Virginia apparently allows counsel fees only when incurred in obtaining release from false imprisonment or in defending against a malicious prosecution, and even then only if it is shown that the tort was committed wantonly or maliciously. Kemp v. Miller, 166 Va. 661, 680, 186 S.E. 99, 106 (1936) (dictum); Bolton v. Vellines, 94 Va. 393, 26 S.E. 847 (1897); Burruss v. Hines, 94 Va. 413, 26 S.E. 875 (1897). We think that Virginia would treat this case within the general rule denying counsel fees and not within one of the exceptions.

▋ The award of punitive damages and the amounts of the award seem proper. The district judge found that the acts of Zentmeyer and Tebell, which inured to the benefit of ECI, and were imputed to it, were "calculated," "deliberate," and "reprehensible," that Zentmeyer and Tebell were both guilty of serious breaches of loyalty, fidelity and responsibility to Sperry Rand and that "[t]he acts of the defendants were wilful and deliberate and were committed with the knowledge that they were unlawful and were calculated to result in substantial harm to the plaintiff." On this record we cannot say that these findings are clearly erroneous. There was also evidence that Zentmeyer's net worth was in excess of $750,000.00 and that ECI was a company of undisclosed worth but of "much substance." There was no find-

---

4. In a trade secret case the general rule is that a successful plaintiff may recover loss of profits for misappropriation of his secret, but "profit" includes certain fixed overhead costs. Restatement of Torts § 748 (1938), comment i; American Electronics, Inc. v. Neptune Meter Co., 30 A.D.2d 117, 290 N.Y.S.2d 333 (1968); Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383, 400–403 (D.Md.1963). Cf. Century Distilling Co. v. Continental Distilling Corp., 205 F.2d 140, 147 (3 Cir. 1953) (patent case).

5. Sperry Rand also claimed that had it been awarded the Coast Guard contract its sales of commercial radars over "at least" a five-year period would have been great-

ly increased. Evidence was presented that these profits would have been $82,500.00 per year, totaling profits of $628,030.10 from this source. The district judge disallowed this item of damages as too speculative, and Sperry Rand has not appealed.

6. On the other issues in this case, the parties have not referred us to Virginia law. Consequently, general common law has been applied. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111 at 111 n. 1, 59 S.Ct. 109, 83 L.Ed. 73 (1938); International Industries, Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3 Cir. 1957), appeal dismissed, 355 U.S. 943, 78 S.Ct. 529, 2 L.Ed.2d 523 (1958).

ing as to Tebell's net worth, but the award of punitive damages against him was relatively nominal. It, therefore, appears that while the total punitive damages assessed were substantial they were not excessive under all of the circumstances. We do not, therefore, find any abuse of the discretion lodged in the district judge to make the award. Day v. Woodworth, 13 How. 363, 371, 14 L. Ed. 181 (1851); Kaufman v. Abramson, 363 F.2d 865 (4 Cir. 1966) (applying the law of Virginia.) *Cf.* American Safety Table Co. v. Schreiber, 415 F.2d 373 (2 Cir. 1969).

Defendants' only attack on the award of punitive damages is grounded upon the dictum in Coca-Cola Co. v. Dixi-Cola Laboratories, Inc., 155 F.2d 59 (4 Cir. 1946), that a court of equity may not award punitive damages without express statutory authority. In *Coca-Cola,* we held that, in an action for an injunction restraining infringement of a trademark and an accounting for alleged profits realized from the infringement, it was proper for the special master not to allow punitive damages where the plaintiff was unable to prove any actual loss. We then added the dictum that, in the absence of statute, an equity court is without power to assess exemplary or punitive damages and that Rule 2, F.R. Civ.P., providing for a single form of action in federal courts, did not "alter this situation." 155 F.2d at 63.

■■ Even if we assume that this dictum has not been displaced by Ross v. Bernhard, 396 U.S. 531, 539–540, 90 S.Ct. 733, 739, 24 L.Ed.2d 729 (1970), ("[u]nder the Rules there is only one action—a 'civil action'—in which all claims may be joined and all remedies are available"), the fact is that Sperry Rand's complaint alleged both legal and equitable causes of action and contained a prayer for both injunction and damages, and the legal cause of action was found meritorious. They were not an adjunct or consequence of the right to equitable relief. We therefore, find *Coco-Cola* inapposite.

To summarize with respect to damages, we conclude that $400,000.00 of the award against all defendants should not have been granted. On remand, we will direct that compensatory damages against all defendants be reduced to $231,012.00, with punitive damages of $175,000.00 against Zentmeyer and ECI, and $10,000.00 against Tebell.

### III

■ Finally, we find no merit in defendants' argument that the district judge abused his discretion when he denied defendants the right to amend their pleadings to assert their right to recover damages for the defense, earlier pleaded, that Sperry Rand's suit was not brought in good faith but was brought as part of a continuing policy to injure ECI. In any event, the district judge received defendants' evidence by way of defense and found the charge groundless. We agree.

Vacated and remanded.