Forrest R. DEGLER et al., Plaintiffs,

v.

LAKE HOLIDAY ESTATES, INC., et al., Defendants.

Civ. A. No. 75–0031.

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Dec. 23, 1975.

Larry W. Thomas, Washington, D. C., H. Dudley Payne, Arlington, Va., for plaintiffs.

David J. André, Kuykendall, Whiting & Costello, Winchester, Va., for defendants.

OPINION and ORDER

TURK, Chief Judge.

This case is before the court pursuant to plaintiffs' motion for summary judgment as to the first count of their six count complaint. In this count plaintiffs allege that on April 30, 1972 they contracted to purchase a parcel of real estate, designated as Lot No. 129, Section 5 of Lake Holiday Estates, from defendant:[1] that as a part of this contract

1. Plaintiffs have named as defendants Lake Holiday Associates a/k/a Lake Holiday Estates, Inc. a/k/a "The Summit at Lake Holiday" and Lake Holiday Country Club, Inc. The parties agree that Lake Holiday Country Club, Inc. should not be a defendant in this suit, and it is therefore dismissed. Lake Holiday Associates was a Virginia partnership consisting of two corporate partners, however in the answer to plaintiffs' interrogatory 4 it is stated that Lake Holiday Associates no longer exists. In a letter to the Office of Interstate

defendant covenanted to construct water and sewer facilities to the lot within three years of the date of sale; that plaintiffs have performed the conditions imposed on them by the contract; and that defendant has failed, neglected and repudiated its obligation to construct the water and sewer facilities within the prescribed time. By their motion for summary judgment plaintiffs seek rescission of the contract and restitution of the sums they have expended pursuant to the contract.

The undisputed facts pertinent to the plaintiffs' motion are as follows. Paragraph number 14 of the April 30, 1972 sales contract between plaintiffs and defendant provides:

> This contract, copy of HUD report with copy of the restrictions and covenants attached thereto, the Application for Membership and the Rules and Regulations to the Lake Holiday Country Club, the deed, deed of trust (if any), the bond or note (if any), when executed, contain the final and entire agreement between the parties hereto.

The HUD property report referred to in paragraph 14 of the sales contract is dated February 24, 1972 and states:

> 10. State whether the following are now available in the subdivision: Garbage and trash collection, sewerage disposal, paved streets, electricity, gas, water, telephone. If yes, state any estimated costs to buyer or lessee. If proposed or partly completed, state promised completion date, provisions to insure completion and give estimates of all costs to buyer or lessee.
>
> Answer:

> .    .    .    .    .

(ii) *Sewerage disposal*: The preliminary plans for central sewerage treatment have been approved by the State Water Control Board in Richmond, and plans are to commence the installation of the system in early 1972, as soon as weather permits, and to continue the installation on a section by section basis. This system will provide sanitary sewers to each lot in the subdivision, and will be available to each lot no later than three years after date of lot sale, and much sooner if possible. This installation will be at no cost to buyer except for the one-time connection charge, as provided in paragraph 7. (b)(vi) above.

> .    .    .    .

(vi) *Water*: Two water well lots have been dedicated and two wells drilled in Section I. One has been approved in writing by the Division of Mineral Resources in Richmond. The quality and quantity of water are more than adequate. Installation of the Central Water System is expected to commence in early 1972. The water lines will be available to each lot within three years of sale, and probably much sooner. This installation will be at no cost to buyer except for the connection charge as provided in paragraph 7. (b)(v) above.

The HUD property report further states:

> 20. Assurance of completion of facilities and amenities.
>
> *Answer:* To assure the orderly development of the project and the installation of all planned facilities and amenities, a development loan commitment of $13,300,000.00 has been arranged with U. S. F. Investors, a real estate investment trust.[2]

Land Sales Registration of the Department of Housing and Urban Development the President of Lake Holiday Estates states that as of August 4, 1972 Lake Holiday Estates has been the sole owner of the Lake Holiday project. Accordingly, references to "defendant" in this opinion and order refer to Lake Holiday Estates, Inc.

2. Although not necessary to this decision, the court notes that defendant states in response to plaintiffs' interrogatories 36 and 37 that when operations first began the capital available for the construction of improvements and facilities was "nominal" and that after the sale of lots began the source of capital was "funding of contracts of lot purchasers". However, defendant states in its answer to interrogatory 64 that a development loan commitment in the amount of 13.3 million dollars from Independence Mortgage Trust is currently available to finance improvements and facilities.

It is also undisputed that plaintiffs and defendant entered into the aforementioned sales contract on April 30, 1972, and pursuant to this contract plaintiffs contracted to purchase Lot No. 129, Section 5 of Lake Holiday Estates. Finally in its answers to plaintiffs' interrogatories, filed on October 30, 1975, defendant states that "construction of water and sewer facilities in Section 5 have not begun".

Jurisdiction of count 1 of plaintiffs' complaint is based on diversity of citizenship, and the applicable law is therefore the law of Virginia. The issue presented by plaintiffs' motion for summary judgment which must be decided is whether under Virginia law the defendant's failure to construct water and sewerage facilities to plaintiffs' lot within three years of the sales contract entitles plaintiffs to the equitable remedy of rescission and restitution.

■ In *Ames v. American National Bank of Portsmouth,* 163 Va. 1, 39, 176 S.E. 204, 216 (1934) the Court stated:

The polestar for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used.* (emphasis in original).

The contract signed by plaintiffs and defendant explicitly refers to the HUD property report as part of the "final and entire agreement between the parties . . . ." This provision clearly incorporates the HUD property report as a part of the contract, and this is consistent with the well established rule that "where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." 17 *Am.Jur.*2d Contracts § 263 (1964). *See Cary v. Holt,* 120 Va. 261, 91 S.E. 188 (1917); *Pritchard, Contractor v. Nelson,* 147 F.2d 939 (4th Cir. 1945); 4B *Michie's Jurisprudence, Contracts* § 49. The court accordingly has no hesitation in concluding that the property report is legally a part of the sales contract which binds the defendant.

However, the issue remains whether rescission of the contract is justified by defendant's failure to construct water and sewer facilities within three years as provided in the property report. The applicable law is stated in 16 *Michie's Jurisprudence, Rescission, Cancellation and Reformation* § 12 as follows:

The misrepresentation, in order to constitute grounds for rescission of the contract, must, as a general rule, be the positive statement of a material fact, made for the purpose of securing the contract, as distinguished from a mere matter of opinion, unless the parties are dealing upon unequal terms, and one has means of information not equally open to the other. When such misrepresentation is present the actual prejudice to the other party need only be slight to afford relief. The misrepresentation which will entitle a party misled to rescission of the contract must have been made as part of the same transaction and such misrepresentation must have been relied on. (footnotes omitted).

■ The law to be applied to this case was stated in *Trust Co. of Norfolk v. Fletcher,* 152 Va. 868, 148 S.E. 785 at 788 (1929) where the Court quoted from its earlier decision in *Grim v. Byrd,* 32 Grat. (73 Va.) 293, 300:

[T]he doctrine is believed to be well settled in the United States, that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is ground for a rescission by a court of equity, although the party making the representation was ignorant as to whether it was true or false; and the real inquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it in entering into the contract. For in such case, whether the false representation was innocently made or knowingly made, the effect is the same upon the purchaser.

■ The court has no difficulty in concluding from the documents submitted by plaintiff in support of their motion for summary judgment that defendant's representations that water and sewerage facilities would be constructed to plaintiffs' lot within three years were material misrepresentations and that such misrepresentation constituted a substantial inducement to plaintiffs. Without water and sewerage facilities the lot is unsuitable for home construction which is the obvious purpose of the lots sold by defendant. The defendant's breach of contract cannot be characterized as technical as in *Bolling v. King Coal Theatres,* 185 Va. 991, 41 S.E.2d 59 (1947), but rather is so substantial as to defeat plaintiff's object in making the contract. The court is therefore of the opinion that the defendant's failure to provide water and sewerage facilities within three years of the sales contract as provided in such contract justifies rescission of the contract under Virginia law. *E. g., Planters National Bank of Fredericksburg v. Heflin Co.,* 166 Va. 166, 184 S.E. 216 (1936).

■ As noted above, there is no dispute as to the material facts regarding the terms of the contract or defendant's breach of contract by its failure to provide water and sewerage to plaintiffs' lot within three years. No more is required to warrant summary judgment pursuant to *Fed.R.Civ.P.* 56. 6 J. Moore's *Federal Practice,* § 56.17[11] at 2507–2513 (2nd ed. 1974).

■ In addition to restitution of the consideration expended under the contract plaintiffs have asked for reasonable attorneys' fees. In *Sperry Rand Corp. v. A–T–O, Inc.,* 447 F.2d 1387 at 1394 (4th Cir. 1971), *cert. denied* 405 U.S. 1017, 92 S.Ct. 1292, 31 L.Ed.2d 479 (1972), a diversity action in Virginia, the court held that in diversity suits the allowance of attorneys' fees was governed by state law. In reversing the district court's al-lowance of attorneys' fees the court stated,

> "The Virginia rule is that '[e]xcept in rare instances, the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which · inures to the common benefit of all  . . . .' *McCormick v. Elsea,* 107 Va. 472, 475, 59 S.E. 411 (1907), quoted with approval in *Norris v. Barbour,* 188 Va. 723, 51 S.E.2d 334, 342 (1949)." 447 F.2d at 1394.

In the present case the court is aware of no authority under Virginia law for the award of attorneys' fees to plaintiffs, see 2A *Michie's Jurisprudence, Attorney and Client* § 38; 5 *Michie's Jurisprudence, Costs* § 3, and therefore plaintiffs' request for attorneys' fees will be denied.

For the reasons stated it is the judgment of the court that plaintiffs' motion for summary judgment as to count 1 of their complaint be and the same hereby is granted, and pursuant to such judgment it is ordered:

(1) that the Agreement of Sale dated April 30, 1972 between plaintiffs and defendant and documents related to said Agreement of Sale be rescinded and cancelled;

(2) that plaintiffs are entitled to restitution from the defendant of all sums paid by plaintiffs pursuant to said Agreement of Sale with interest thereon from the dates of payment;

(3) that the plaintiffs and defendant submit to the court within 15 days from the date of this opinion a proposed order in conformity with this opinion;

(4) that plaintiffs' prayer for attorney fees is denied.