**GENERAL ENVIRONMENTAL SCIENCE CORPORATION, Plaintiff,**

v.

**Frank L. HORSFALL, et al., Defendants.**

No. 1:90 CV 1340.

United States District Court, N.D. Ohio, E.D.

May 29, 1992.

Jerome F. Weiss, William T. Davis, Weiss, Neiditz and Associates, Cleveland, Ohio, for plaintiff.

Stephen D. Walters, Jason T. Blackford, Thomas C. Buford, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

This case came before the Court for a hearing on April 21, 1992, on the issue of damages, attorney fees and costs. Based upon the evidence and argument presented at the hearing, together with such evidence already of record in this case, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. General Environmental Science Corporation ("GES") is a corporation headquartered in Cleveland, Ohio which sells live-liquid micro organism ("LLMO"). The product is sold in the United States and around the world, and is used to treat waste water and aquarium water, among other things. GES also developed and owned a technology known as an on-site activation system. (Transcript of Hearing held April 21, 1992 ("Hearing Trans.") at 12–13, 75).

2. Beginning in about 1988, GES began selling its LLMO product in Europe through Frank Horsfall ("Horsfall") and John Strauss ("Strauss").

3. Between August 1989 and December 1989, Defendants confided in Karl Ehrlich ("Ehrlich") that they

> were entering a contract for distribution with GES that they never intended to honor, and that they planned in the future to break this contract as soon as they could set up their own production facilities and that the would use product variability and potency as a basis for breaking the contract and competing.

(Ehrlich Affidavit at ¶ 8).

4. In November 1989, Biosys Corporation[1] ("Biosys"), which is owned and controlled by Strauss, Horsfall, and Gustavo Gysler ("Gysler"), signed a contract with GES to be its European distributor of LLMO. (Hearing Trans. at 13–14; Verified Complaint at ¶ 14).

5. On or about May 4, 1990, Defendants terminated their relationship with GES, citing product variability and potency (Verified Complaint at ¶ 16). On that same day, Defendants formed a new corporation called Biosphere, S.A.

6. Defendants confirmed the termination of their relationship with GES on May 15, 1990 and began competing with GES.

7. On July 27, 1990, GES filed a complaint against Gysler, Horsfall, Strauss, and Biosys alleging theft of trade secrets, violation of RICO, breach of non-compete

---

1. Biosys was formerly known as X–O Corporation.

provisions, defamation and various other state tort claims. GES sought actual damages in the amount demonstrated by the evidence, as well as treble damages under RICO and the Ohio Corrupt Activities Act, punitive damages under state law, attorney fees and costs, and injunctive relief.[2]

8. On March 10, 1992, 141 FRD 443, the Court entered a default judgment as to liability against Defendants and dismissed the counterclaim of Biosys with prejudice pursuant· to Rule 37(b)(2) of the Federal Rules. The counterclaims of Strauss and Horsfall were dismissed with prejudice on April 7, 1992. As a further sanction, Defendants and their counsel were ordered to pay all of the attorney fees and costs incurred by Plaintiff in this case.

9. On April 21, the Court held a hearing on the issue of damages, attorney fees and costs.

10. GES presented the following evidence: (1) testimony of GES President Barton Gilbert; (2) affidavit of economist John Burke, Ph.D.; (3) exhibits pertaining to GES product ordered by Defendants but never paid for; (4) references to the Gysler's deposition testimony; (5) affidavit of Barton Gilbert as to attorney fees, costs and other economic damages; (6) affidavits of counsel Jerome F. Weiss, Esq., William T. Davis, Esq., Niki Z. Schwartz, Esq., and Richard L. Stoper, Esq., as to attorney fees and costs; and (7) affidavit of Karl F. Ehrlich.

11. Defendants, represented by counsel, presented no evidence other than references to the transcript of Gysler's deposition.

12. Stephen Walters, Esq., Thomas C. Buford, Esq., and Jason C. Blackford, Esq. were present for all or part of the hearing and presented no evidence. The law firm of Weston, Hurd, Fallon & Paisley was represented by counsel at the hearing, but presented no evidence.

13. Specifically, GES seeks damages for (1) product ordered and shipped but not paid for; (2) lost profits on European sales of LLMO; and (3) lost revenues resulting from Defendants' use of GES's on-site activation system technology.

14. Defendants ordered and received LLMO product from GES totaling $41,-214.50. Defendants never reimbursed GES for these items. (Hearing Trans. at 44; Hearing Exhibit 4).

15. GES has been unable to re-establish its business in Europe as a result of Defendants' illegal competition, Defendants' theft of customers with whom they had primary contact as a distributor, and this lawsuit. (Hearing Trans. at 41). GES has been unable to re-establish a distribution network. *Id.* at 43.

16. GES presented evidence of its historical sales of LLMO in Europe to establish its lost profits. GES sales of LLMO in Europe increased from $17,339 for the year May 15, 1985 through May 15, 1986, to $173,334 for the year May 15, 1989 to May 15, 1990.[3] During this period, GES sales in Europe grew at an annual compounded growth rate of nearly 78 percent. *Id.* at 23.

17. During the year after Defendants began the unlawful activity alleged in the complaint, GES sales in Europe fell to $44,-635. Sales for the year May 15, 1991 to present fell further to $32,308. *Id.* at 24.

18. GES presented the affidavit of John F. Burke, Jr. ("Dr. Burke"), Associate Professor of Economics at Cleveland State University. Dr. Burke has an M.A. and Ph.D. in Economics from the University of Notre Dame and has been an associate professor at Cleveland State University since 1970. Dr. Burke has been the recipi-

---

**2.** In its Verified Complaint, GES prayed for the following damages:
   1) Actual damages of at least $41,214.50 and such further damages as the evidence may show, trebled as provided for in 18 U.S.C. § 1964(c), and R.C. § 2923.34;
   2) Punitive damages in the amount of not less than $10,000,000.00;
   3) [request for injunctive relief]
   4) [request for declaratory relief]
   5) Expenses and an award of attorney fees;
   6) Interest and costs; and
   7) Such other relief as the Court deems appropriate.

**3.** A May-to-May year was used because Defendants began competing with GES in May.

ent of several awards, is a member of several professional organizations, and has authored several articles and papers. Dr. Burke has also presented testimony to several legislative bodies.

19. In preparing his affidavit, Dr. Burke reviewed "industrial data available from Dunn & Bradstreet Credit Services and actual financial statements of [GES] from the fiscal year ending 1987 through the month ending August 31, 1991, including actual sales history in Europe." (Burke Affidavit at ¶ 3).

20. Based on his review of this data, Dr. Burke projected potential lost sales suffered by GES as a result of the activities alleged in the Verified Complaint and the lost sales already demonstrated by the record of GES sales.

21. In projecting lost sales, Dr. Burke assumed that actual sales would "catch up" to projected sales by 1996. *Id.* at ¶ 9.

22. Dr. Burke projected sales at three different rates: (1) 30 percent which was the average annual growth rate set forth by GES and Biosys in their 1989 contract in order to permit the parties to renew the contract from year to year; (2) 77.8 percent which was the historical annual growth rate for GES's sales in Europe; and (3) 50 percent which was a midpoint between the first and second rates. *Id.* at ¶¶ 8, 10.

23. Based on his review and analysis of GES's financial statements, Dr. Burke determined that GES's average contribution margin on sales between 1987 and 1991 was 68.29 percent. The contribution margin is calculated by subtracting the variable costs from the total sales. The resulting contribution margin indicates the percentage of each sale which then contributes toward payment of fixed costs or, if such costs have been covered, constitutes profit. *Id.* at ¶ 11.

24. Burke testified that "[i]n this case, the contribution margin equates with profits because all the fixed costs associated with this level of production have been covered." *Id.* at ¶ 12.

25. Based on an annual growth rate of thirty percent, Dr. Burke determined that GES would suffer lost profits of $923,661 prior to 1996 when it was assumed actual sales would catch up with projected sales. *Id.* at ¶ 13.

26. Based on an annual growth rate of 77.8 percent, Dr. Burke determined that GES would suffer lost profits of $3,081,263 prior to 1996 when it was assumed actual sales would catch up with projected sales. *Id.* at Table 16.

27. Based on an annual growth rate of fifty percent, Dr. Burke determined that GES would suffer lost profits of $1,572,505 prior to 1996 when it was assumed actual sales would catch up with projected sales. *Id.* at ¶ 13.

28. GES also seeks damages from Defendants' use of GES's trade secrets relating to an on-site activation system for microbiological products, which GES had developed but not marketed in Europe. Defendants marketed this technology in Europe under the name "Systems on Site" or "SOS". Since GES never marketed the on-site activation system in Europe, it has no sales or profit figures from which to calculate lost sales or profits.

29. Defendants, as documented in this Court's orders of April 4, 1991, May 24, 1991 and March 10, 1992, have refused to produce some of their business records and most of their financial records pertinent to the issues before the Court. Accordingly, Defendants' revenues, sales and/or profits from use of the on-site activation technology cannot be confirmed beyond the sworn deposition testimony of Gysler, the administrator or chief executive of both Biosys and Biosphere.

30. Gysler testified that Defendants had entered into, or were on the verge of entering into, contracts with customers in France, England, and Spain. Gysler also testified that Biosphere has not made any profit in any area of waste water treatment. (Gysler Depo. at 428–29). GES contends that these contracts would have generated over five million dollars annually. (*See* GES' Memorandum on Damages at 19). GES based its calculation on Gysler's testimony concerning Defendants' anticipated income.

31. The figures GES relies on represent anticipatory amounts of income and are speculative in nature. However, GES has established that Defendants entered into a contract with BioAbengoa providing them 650,000 Swiss francs [4] and a 12% royalty. (Gysler Depo. at 170, 583).

32. GES submitted affidavits of its counsel documenting the following fees and costs incurred in the litigation of this lawsuit:

| | |
|---|---|
| Fees of Jerome F. Weiss, Esq. | $143,412.25 |
| Expenses of Jerome F. Weiss & Associates | 5,813.51 |
| Morse, Gantverg & Hodge | 19,735.90 |
| Fees of William T. Davis, Esq. | 23,050.00 |
| Fees of Niki Z. Schwartz, Esq. | 44,625.00 |
| Expenses of Gold, Rotatori, Schwartz & Gibbons | 11,169.32 |
| Fees of Richard L. Stoper, Jr., Esq. | 41,531.25 |
| Total | $289,337.23[5] |

(See Exhibit E to GES's Memorandum on Damages and Supplemental Affidavit to Plaintiff's Memorandum on Damages). The hourly rates charged were not objected to and were previously approved by the Court in the award of fees and costs ordered on October 10, 1991.

33. GES has also submitted the affidavit of Barton Gilbert documenting the following additional attorney fees and costs.

| | |
|---|---|
| Eric Stoudmann, Esq. | $17,750.00 |
| Records Deposition Service | 217.85 |
| Dr. Richard Graham | 1,000.00 |
| Case Western Reserve University | 950.00 |
| Original Copy Centers | 644.50 |
| Morse, Gantverg & Hodge | 75.00 |
| DocuCopy Management | 1,012.31 |
| Mehler & Hagestrom | 1,272.50 |
| Birdie Thaler | 450.00 |
| Total | $23,372.16 |

34. In addition, the affidavit of Barton Gilbert reflects expenses of $12,160.52 for trips to Europe in connection with this litigation and expenses of $49,560.00 for time spent by GES employees in connection with this lawsuit.

35. Any Conclusion of Law deemed a Finding of Fact is incorporated herein.

## CONCLUSIONS OF LAW

1. Any Finding of Fact deemed a Conclusion of Law is incorporated herein.

2. Upon default judgment, " 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.' " *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990) (quoting 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, § 2668 at 444 (2d ed. 1983) (citation omitted)). "As a general rule, a 'default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint.' " *Dundee Cement Co. v. How-*

**4.** $426,660 in American dollars based on the currency exchange rates on April 15, 1992.

**5.** This amount includes the $44,424.75 in attorney fees and costs which Defendants were ordered to pay as a sanction for discovery abuses.

ard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir.1983) (quoting *Breuer Electric Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir.1982)).

■ 3. "A default judgment ... does not establish the amount of damages." *United States of Am. for the Use of M–CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir.1987) (citations omitted).

■ 4. "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism*, 777 F.2d 1538, 1544 (11th Cir.1985) (citation omitted).

■ 5. Damages awarded following entry of a default judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Rules 54 and 55 of the Federal Rules. GES prayed for "[a]ctual damages of at least $41,214.50 *and such further damages as the evidence may show.*" Therefore, GES is entitled to seek damages beyond the $41,214.50.

■ 6. The measure of damages under RICO is "the harm occasioned as a result of the predicate acts of the offenders. A Plaintiff injured by civil RICO deserves a 'complete recovery.'" *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299–1300 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029, *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990) (citations omitted). These damages must be "established by competent proof, not based upon mere speculation and surmise." *Id.* at 1299.

■ 7. GES is entitled to recover damages suffered in its "business or property." 18 U.S.C. § 1964(c). As a result of Defendants' failure to pay for product ordered from GES, GES suffered damages of $41,-214.50.

■ 8. Although the Sixth Circuit has not addressed the issue of the recovery of lost profits under RICO, other district courts have allowed their recovery. *See Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F.Supp. 127 (S.D.N.Y. 1988); *DeMent v. Abbott Capital Corp.*, 589 F.Supp. 1378 (N.D.Ill.1984). In *DeMent*, the court held that "[i]f the 'damages sustained' by a victim of a RICO violation include lost profits, we see no bar in the statute to recovery of those losses. Of course, recovery of lost profits should be subject to the ordinary limitations concerning remoteness (or proximate cause) and speculativeness (or certainty)." *DeMent*, 589 F.Supp. at 1386. The Court adopts this reasoning. Furthermore, lost profits are recoverable under Ohio law for the predicate acts. *See Premix, Inc. v. Zappitelli*, 561 F.Supp. 269 (N.D.Ohio 1983) (employee's breach of restrictive covenant); *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 19 Ohio App.3d 246, 484 N.E.2d 280, 287 (1985) (theft of trade secrets).

9. The principal factual basis for damages alleged in the complaint is the damages suffered by GES as a result of Defendants' theft of trade secrets and use of such trade secrets for their own profit.

There are two basic methods for assessing damages for misappropriation of trade secrets: one, the damages sustained by the victim (the traditional common law remedy), and the other, the profits earned by the wrongdoer by the use of the misappropriated material (an equitable remedy which treats the wrongdoer as trustee *ex maleficio* for the victim of the wrongdoer's gains from his wrongdoing). Ordinarily a plaintiff may recover either, but not both, because to allow both would permit double recovery. Since the objective in allowing damages is to compensate the plaintiff for the difference in his position before and after the misappropriation of his secret, his probable loss may be the more significant measuring rod than the misappropriator's actual gain.

*Sperry Rand Corp. v. A–T–O, Inc.*, 447 F.2d 1387, 1392–93 (4th Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1292, 31 L.Ed.2d 479 (1972).

10. Although GES's loss cannot be calculated with mathematical certainty,

[w]here the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931).

11. Normally, lost profits are defined as lost net profits. However, the Ohio Supreme Court has allowed recovery of lost gross profits, as equivalent to net profits, where the defendants failed to prove that additional expenses should have been deducted to derive net profits. *Digital & Analog Design Corp. v. North Supply Co.*, 44 Ohio St.3d 36, 540 N.E.2d 1358 (1989). Dr. Burke testified that all of GES's fixed costs were covered. Defendants have not offered any evidence to show that additional expenses should have been deducted. Therefore, GES's lost profits can be calculated by multiplying the lost sales by the contribution margin.

12. As a result of the conduct alleged in the verified complaint, GES has lost profits of $923,661 on past and future sales of LLMO in Europe. This calculation is based on a five year recovery period and a projected annual growth of thirty percent. The five year recovery period is a reasonable estimate. Although this is not a contract action, an annual growth rate of thirty percent is reasonable given that Defendants and GES agreed in their 1989 contract that their relationship would continue if certain minimum annual purchases were met each year. The average annual increase in minimum sales required to renew the contract was about thirty percent.

13. GES is also entitled to compensation for Defendants' misappropriation of GES's on-site activation system technology, even though it has never been sold by GES in Europe. A plaintiff "may recover profits, even if he had not been manufacturing and would have been then unable to make the sales; and this is because he had a monopoly in the article itself." *G. & C. Merriam Co. v. Saalfield*, 198 F. 369, 376 (C.C.A.Ohio 1912).

14. GES has established that Defendants entered into a contract with BioAbengoa which generated $426,660. GES is entitled to recover the profits earned by Defendants. Although Gysler testified that Biosphere did not make any profits on waste water treatment, GES is entitled to recover the profits Defendants earned on this particular contract. Because Defendants have withheld their financial records and other documents, Defendants' profit margin cannot be determined. Defendants' will not be permitted to profit from their abuse of the discovery process. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931) ("The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.") Therefore, the Court will estimate Defendants' profit using GES's contribution profit. Accordingly, GES is awarded damages of $291,366.11 based on Defendants' theft of the GES on-site activation technology. Since the Court entered a permanent injunction on March 10, 1992, there is no need to award future damages.

15. GES has also been damaged in regards to amounts expended by GES to attempt to regain customers or save lost accounts. *Dozor Agency, Inc. v. Rosenberg*, 218 A.2d 583 (Pa.1966). Gilbert's affidavit documents to expenses of $12,160.52 for trips to Europe in connection with the matters alleged in the complaint. Furthermore, GES incurred expenses of $49,560.00 in connection with time spent by

its employees in dealing with Defendants' actions.

16. GES's total compensatory damages are as follows:

| | |
|---|---:|
| Unpaid Product | $ 41,214.50 |
| Lost Profits on LLMO | 923,661.00 |
| Lost Profits on On–Site Activation System | 291,366.11 |
| Consequential Damages —Travel | 12,160.52 |
| —Employee Time | 49,560.00 |
| Total | $1,317,962.13 |

17. "Any person injured in his business or property by reason of a violation of section 1962 ... shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). "[I]mposition of treble damages is required by RICO." *MDO Dev. Corp. v. Kelly*, 735 F.Supp. 591, 593 (S.D.N.Y.1990). "RICO treble damages ... are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing damages." *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 n. 8 (7th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). Treble damages are also provided for by the Ohio Corrupt Activities Act. *See* Ohio Rev.Code § 2923.34(F). After trebling, GES's compensatory damages are $3,953,-886.39.

18. Punitive damages may be awarded in a tort action when the plaintiff has suffered actual damages and where the acts and omissions of the defendant "demonstrate malice, aggravated or egregious fraud, oppression, or insult." Ohio Rev. Code § 2315.21(B).

19. Ohio courts have awarded punitive damages in trade secret cases "where the evidence shows that the defendant acted willfully and intentionally and with malicious intent." *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 454 N.E.2d 588, 595 (1983) (citations omitted) (upholding award of punitive damages against employee who stole employer's trade secrets and then attempted to compete against him).

20. The Ohio Supreme Court has defined actual malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1173 (1987) (syllabus).

21. Defendants acted with "a conscious disregard for the rights" of GES. GES established, through Ehrlich's affidavit, that Defendants planned their actions in advance. Defendants became GES's European distributor, set up shell corporations, stole GES's trade secrets and then used them to compete against GES. Because Biosys was GES's sole European distributor, Defendants had primary contact with GES's customers. Thus, Defendants' scheme had the probable result of harming GES's business interests. Furthermore, Defendants' claims of product variability and potency also were calculated to harm GES's business interests. Then after GES brought suit, Defendants abused the discovery process, ignored Court orders, and violated the preliminary injunction. Defendants' misconduct during this litigation has been documented in previous court orders.

22. The purpose of awarding punitive damages is "to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 575 N.E.2d 416, 419 (1991). The amount awarded should be no more and no less than that sufficient to achieve this purpose. *Villella v. Waikem*

*Motors, Inc.*, 45 Ohio St.3d 36, 543 N.E.2d 464, 477 (1989) (Wright, J., concurring).

23. The Court "has considerable discretion in fixing damages. The factors to be considered are (1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants." *Professional Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir.1984).

24. Defendants have shown a complete and callous disregard for the truth, for GES and for the judicial system. To punish them and deter others from engaging in such conduct, GES is awarded punitive damages in the amount of twice their compensatory damages. This amount is reasonable considering the nature and scope of Defendants' actions and the amount of compensatory damages awarded. Because Defendants have failed to produce financial records, the effect of this award of punitive damages cannot be measured against Defendants' wealth. However, Defendants cannot escape the imposition of punitive damages by withholding documentation of their financial status.

25. Defendants and their counsel were ordered to compensate GES for its attorney fees and expenses incurred in this action. GES and its counsel have itemized these expenses and attorney fees. Their rates are reasonable for the level of skill and experience of Plaintiff's counsel and considering complex issues raised by RICO and several issues of foreign law raised by the Defendants. Accordingly, $268,284.64 in fees and costs are assessed jointly and severally against Defendants and their counsel Jason Blackford, Thomas C. Buford, Stephen Walters.

26. All other motions are dismissed as moot.

### CONCLUSION

GES has proved actual damages of $1,317,962.13. After trebling as provided by 18 U.S.C. § 1964, the damages of GES are $3,953,886.39. Punitive damages of $7,907,772.78 are awarded. Thus, Defen-dants are jointly and severally ordered to pay GES $11,861,658.17 in damages.

Attorney fees and costs of $268,284.64 are awarded jointly and severally against Defendants and their counsel, Jason Blackford, Thomas Buford, and Stephen Walters. Defendants remain obligated to pay $44,-424.75 in attorney fees previously awarded.

IT IS SO ORDERED.